**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **JUAN TORRES,** | § | |
| **TDCJ # 01982462,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No.** |
| | § | **DR-17-CV-025-AM-VRG** |
| **LORIE DAVIS, Texas Department of** | § | |
| **Criminal Justice, Institutional Division** | § | |
| **Director,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

United States District Judge Alia Moses referred the above-captioned matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Petitioner, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the petition [ECF No. 1] be **DENIED**.

## I. BACKGROUND

### A.  Factual

A complete reporter's record of the state trial court proceedings was not produced. Therefore, the following summary of the relevant allegations and events is gleaned from the information available in the state court records and from the parties' submissions:

Petitioner was indicted in April of 2012 by a Uvalde County grand jury. The first count of the indictment alleged Aggravated Sexual Assault in two paragraphs, each alleging the use of a deadly weapon, i.e., Petitioner's hands. The second count alleged Continuous Violence Against the

Family. Specifically, the indictment alleged the anal rape of Petitioner's wife, and that, on a separate occasion, Petitioner assaulted his wife by striking and kicking her. (Clerk's R. at 4, ECF No. 14-6.)

### B. Procedural

Respondent has custody of Petitioner pursuant to a judgment and sentence of the 38th District Court of Uvalde County, Texas, in cause number Cause No. 2012-04-12006-CR. (Clerk's R. 75, ECF No. 14-6 at 75.) Petitioner was accused of crimes committed on or about December 21, 2011, and his pre-indictment counsel was Mr. Munoz. Petitioner rejected a pre-indictment plea offer, which provided for a maximum ten-year sentence on the charge of aggravated assault of a family member with serious bodily injury, with the State recommending community supervision. (Clerk's R. 52-53, ECF No. 14-6 at 52-53; Writ R. 83,781-02, ECF No. 14-18 at 159.)

Petitioner terminated Mr. Munoz's representation in March of 2012, and retained Mr. Reyes. In April of 2012, Petitioner was charged by indictment with Aggravated Sexual Assault and Continuous Violence Against the Family. (Clerk's R. 4, ECF No. 14-6 at 4; Writ R. 83,781-02, ECF No. 14-18 at 159.) Mr. Reyes filed motions and appeared for docket calls and hearings. (Writ R. 83,781-02, ECF No. 14-18 at 160.) Mr. Reyes investigated the charges, negotiated with the State, and prepared for trial, interviewing the complaining witness and reviewing the State's evidence with Petitioner. (*Id.*)

Petitioner terminated Mr. Reyes's representation and retained Mr. Hudson in July of 2013. (*Id.*) Mr. Hudson obtained Mr. Reyes's files, obtained evidentiary discovery, and filed motions on Petitioner's behalf. (Writ R. 83,781-02, ECF No. 14-18 at 160.) Almost two years after his indictment, on February 10, 2014, the State offered Petitioner another plea deal. The State's offer

2

provided for a ten-year sentence and "shock probation" on the charge of continuous family violence, and a deferred ten-year sentence on the aggravated assault charge.  (Clerk's R. 51-52, ECF No. 14-6 at 51-52; Writ R. 83,781-02, ECF No. 14-18 at 149-50.)  Petitioner deferred accepting a plea offer because he was still in the active military, and he would receive his retirement benefits upon completing 20 years of service on October 30, 2014, absent a dishonorable discharge resulting from a felony conviction by a civil court for conduct such as sexual assault.  (Writ. R. 83,781-02, ECF No. 14-19 at 129.)

On February 19, 2014, with his case set for trial on February 24, Petitioner pleaded guilty to the charge of aggravated sexual assault with serious bodily injury and family violence, pursuant to a plea agreement.  (Clerk's R. 7-11, ECF No. 14-6 at 7-11.)  The agreement "capped" Petitioner's sentence at a maximum of 15 years' imprisonment, and further provided the State would not oppose Petitioner's application for "community supervision/deferred adjudication." (*Id*.)  In the written plea agreement, Petitioner confessed his guilt, and averred his guilty plea was knowing, voluntary, competent, counseled, and uncoerced. (*Id*.)

Petitioner moved to withdraw his guilty plea on February 25, 2014.  (Clerk's R. 14-19, ECF No. 14-6 at 14-19.)  Petitioner's counsel, Mr. Hudson, then moved to withdraw as counsel, which motion was granted. (Clerk's R. 50, ECF No. 14-6 at 50).  Petitioner's new counsel, Mr. Barrera, filed an addendum to the motion to withdraw the guilty plea and a motion for a new trial.  (Clerk's R.51-57, 65-67, ECF No. 14-6 at 51-57, 65-67).  After conducting a hearing on April 21, 2014, the trial court denied the motion to withdraw the guilty plea.  (Clerk's R. 85, ECF No. 14-6 at 85.)  The motion for a new trial was also denied.  (Clerk's R. 75, 85, ECF No. 14-6 at 75, 85.)

On October 10, 2014, Petitioner, through counsel, filed an application for a state writ of habeas corpus, asserting he was not guilty of the crime to which he had pleaded guilty, and that he was not "fully cognizant" when he entered the guilty plea.  (Appl. for Writ of Habeas Corpus, Clerk's R. 58-62, ECF No. 14-6 at 58-62.)  On February 11, 2015, the trial court held a hearing on the application for a writ of habeas corpus.  (Rep.'s R., Vol. 1, ECF No. 14-4.)  The application was dismissed by the Court of Criminal Appeals on September 16, 2015, because Petitioner's conviction was not final. (WR-83,781-01, ECF No. 14-9.)[1]

In the interim, on February 3, 2015, the trial court sentenced Petitioner to a term of seven years' imprisonment.  (Clerk's R. 37, ECF No. 14-6 at 37.)  On February 6, 2015, Petitioner filed another motion for a new trial, again asserting his guilty plea was void as involuntary because he was under the influence of prescription medication at the time he entered his plea. (Mot. for New Trial, Clerk's R. 65-67, ECF No. 14-6 at 65-67.)  The motion was denied on February 11, 2015. (Clerk's R. 74, ECF No. 14-6 at 74.)

Petitioner, through counsel, filed another application for a state writ of habeas corpus on August 13, 2015, asserting he was denied the effective assistance of counsel because counsel coerced him into a guilty plea.  He again argued that his guilty plea was involuntary because he was under the influence of prescription medication when he entered his plea. (WR-83,781-01, ECF No. 14-12 at 9, 11.) The trial court, referencing the hearing conducted February 11, 2015, made findings of fact and recommended that the writ be denied.  (WR-83,781-02, ECF No. 14-18 at 159-165) (entered March 9, 2016.)  The trial court concluded: "The Defendant declined to offer the testimony of

---

[1] The Petitioner filed a notice of appeal from the order denying the writ of habeas corpus on March 19, 2015. (Pet. 3, Clerk's R. 79, ECF No 14-6 at 79.) The Fourth Court of Appeals dismissed the appeal for want of jurisdiction on July 8, 2015. (WR-83,781-01, ECF No. 14-12 at 24.)

Mr. Brandon Hudson [his trial counsel at the time he entered his guilty plea]" at the habeas hearing, and that "any harm done to the Defendant's sentence was the result of the Defendant's own actions." (WR-83,781-02, ECF No. 14-18 at 164.)

On August 15, 2016, the Court of Criminal Appeals remanded the matter to the trial court for additional proceedings. (WR-83,781-02, ECF No. 14-19 at 1-3.) The trial court conducted a hearing on September 22, 2016, at which Mr. Hudson appeared and testified, and additional evidence was introduced by the Petitioner. (Rep. R., Vol. 1, ECF No. 14-19 at 4-145, 154-61; Rep. R., Vol. 2, ECF No. 14-20 at 1-20.) The trial court then made supplementary findings of fact and again recommended the writ be denied. (ECF No. 14-20 at 23-25.)

The trial court's supplemental findings included the following:

> 9. On February 19, 2014, at the final pre-trial docket call, Mr. Hudson again negotiated with the State;
> 10. The Defendant voluntarily entered a plea with this court, agreeing to proceed to have this court determine the appropriate punishment without the full agreement of the State;
> 11. The State sought a prison sentence when negotiating with Mr. Reyes and Mr. Hudson;
> *12. Due to Mr. Hudson's work, the State agreed at the time of the plea to permit the defendant to apply for deferred adjudication supervision, which was only available through a plea to this court;*
> *13. The Defendant showed no indication of confusion or intoxication during his plea;*
> 14. The Defendant made several representations, and the court finds the following to be fact:
> > \*\*\*
> d. That the Defendant chose to plead [guilty];
> e. That he understood the consequences of entering a plea;
> > \*\*\*
> h. That the plea was made freely and voluntarily;
> > \*\*\*
> 17. The Defendant had been well-educated about the charges against him, the evidence likely to be adduced at trial, the range of punishment he faced and the risks of trial;

18. The Defendant was aware of the effect of a plea on his military employment status . . .

(ECF No. 14-20 at 23-25) (emphasis added).

The Court of Criminal Appeals denied the writ on March 1, 2017, on the findings of the trial court, without written order. (WR-83,781-02, ECF No. 14-13.)

Petitioner filed the pending habeas petition on April 27, 2017.  He contends he is entitled to federal habeas relief because his guilty plea was not knowing and voluntary, and because he was denied the effective assistance of counsel. (Pet. 6, ECF No. 1.)  After conducting a preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the undersigned ordered Respondent to file an answer, motion, or other response. Respondent's answer (ECF No. 13), the state court record (ECF No. 14), and Petitioner's reply (ECF No. 16), have been filed. Accordingly, the petition is ripe for disposition.

## II.  DISCUSSION

### A.  Standard of review

A state prisoner may obtain federal habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). State prisoners' habeas petitions are governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See, e.g., Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). The AEDPA prohibits federal courts from granting a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings," unless the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

6

federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court. 28 U.S.C. § 2254(d); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

"A state court's decision is deemed contrary to clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. *Evans v. Davis*, 875 F.3d 210, 215-16 (5th Cir. 2017), *citing Harrington v. Richter*, 562 U.S. 86, 100 (2011). Alternatively, a state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts' of a case." *Pape v. Thaler*, 645 F.3d 281, 287 (5th Cir. 2011) (alteration and internal quotations omitted). In explaining the scope of review afforded under the AEDPA, the Supreme Court has repeatedly emphasized that an unreasonable application of federal law differs from an incorrect application of federal law. *Richter*, 562 U.S. at 101. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "Instead, habeas relief may be granted only if the state court's decision is both incorrect and objectively unreasonable," *Gonzales v. Quarterman*, 458 F.3d 384, 390 (5th Cir. 2006), and regardless of whether or not the federal habeas court would reach the same conclusion. *Woodford v. Viscotti*, 537 U.S. 19, 27 (2002). "This standard of review creates a substantially higher threshold for obtaining relief than *de novo* review," *Paredes v. Thaler*, 617 F.3d 315, 319 (5th Cir. 2010) (internal quotations omitted), and is "purposefully 'difficult to meet.'" *Evans*, 875 F.3d at 217, *quoting Richter*, 562 U.S. at 102.

In assessing the reasonableness of a state court's application of clearly established federal law, a federal habeas court's review is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 182. *See also Ryan v. Gonzales*, 568 U.S.57, 74-75 (2013). The focus of § 2254 review is the state court's ultimate decision. *Evans*, 875 F.3d at 216 ("Importantly, whether the state court's decision involved an unreasonable application of Supreme Court precedent does not depend solely on the state habeas court's actual analysis"). When the state court denies relief without issuing a written order or otherwise specifying its reasons, the AEDPA inquiry is not affected. *Id.*; *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In such cases, federal habeas courts should determine what arguments or theories supported or could have supported the state court's decision, and then determine whether fairminded jurists could disagree that those arguments or theories are inconsistent with a prior Supreme Court decision. *Richter*, 562 U.S. at 102; *Evans*, 875 F.3d at 216-17; *Schaetzle*, 343 F.3d at 443. The state court's factual determinations are "presumed to be correct," and the habeas petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *accord Wesbrook v. Thaler*, 585 F.3d 245, 251 (5th Cir. 2009).

**B.  Merits**

**1.  Knowing and Voluntary Guilty Plea**

Petitioner alleges that his guilty plea was involuntary because he was under the influence of medication when he entered his plea. (Pet. 6, 8; Mem. 7-10, ECF No. 6 at 7-10.)  He further alleges he has "established by clear and convincing evidence that defense counsel coerced him into entering [a] plea." (Mem. 3, ECF No. 6 at 3.)

The Texas Court of Criminal Appeals denied this claim in Petitioner's state habeas action, adopting the trial court's finding that Petitioner's guilty plea was not involuntary or unknowing or coerced.  In an action seeking a federal writ of habeas corpus, whether a guilty plea was voluntary is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d). *See Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983) (holding that the voluntariness of a state prisoner's guilty plea is a question of law, but that the historical facts underlying the entry of the plea are entitled to presumption of correctness).  Accordingly, under the applicable standard of review, the Court must deny relief on this claim unless the state court's decision denying the claim was an unreasonable application of Supreme Court precedent or involved an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to habeas relief on this claim because the state court's application of Supreme Court precedent to the facts of this case was not objectively unreasonable.

The well-established federal law with regard to validity of a guilty plea is that set forth in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970): "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Because a guilty plea constitutes a waiver of constitutional rights, "it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *McMann v. Richardson*, 397 U.S. 759, 766 (1970).  A guilty plea may be challenged only on the grounds that it was made on the defective advice of counsel or that the defendant could not have understood the terms of his plea bargain. *Brady v. United States*, 397 U.S. 742, 755 (1970). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances

surrounding it," *id.* at 749, and may consider such factors as whether there was evidence of factual guilt. *Matthew v. Johnson*, 201 F.3d 353, 364-65 (5th Cir. 2000).

When a defendant is represented by counsel and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771. If the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot have been made knowingly and voluntarily because it would not represent an informed waiver of the defendant's constitutional rights. *Brown v. Butler*, 811 F.2d 938, 942 (5th Cir. 1987); *Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976).

The written plea agreement signed by Petitioner states he was charged with aggravated sexual assault, a first degree felony with a punishment range of five years' imprisonment to ninety-nine years or life imprisonment. (Clerk's R. 7, ECF No. 14-6 at 7.) In the plea agreement, Petitioner avers his counsel admonished him regarding the terms and consequences of his plea. (WR-83,781-02 Supp. R 179, ECF No. 14-20 at 19.) In the written plea agreement Petitioner further averred his guilty plea was not coerced or involuntary. *Id.*

At the plea hearing, the trial court advised Petitioner that he was charged with a first degree felony punishable by a minimum of five years and a maximum of 99 years' incarceration. (ECF No. 12-2 at 6, 7.) Petitioner represented to the trial court that he understood the charge to which he was pleading guilty. (ECF No. 12-2 at 7.) Petitioner told the trial court he had reviewed the plea documents with counsel, and that he was pleading freely and voluntarily, and that he was not being forced to plead guilty. (ECF No. 12-2 at 8.) Petitioner further stated he understood the rights he was waiving, including the right to a jury trial, to present witnesses, and to appeal his conviction and

10

sentence, and that he was "admitting to any evidence that the State would bring in order to prove" the allegations against him. (ECF No. 12-2 at 8-10.)  Petitioner told the court he was satisfied with his counsel's advice and representation. (ECF No. 12-2 at 9-10.)

A defendant's avowal that he understands the nature of the charges against him and the nature of the constitutional rights he is waiving, and that his plea is freely and voluntarily made, creates a presumption that his plea is valid. *Matthew*, 201 F.3d at 366; *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  Although court records alone may be insufficient to establish a waiver of fundamental constitutional rights if they are ambiguous, *Williford v. Estelle*, 672 F.2d 552, 554 (5th Cir. 1982), the record in this case does not suffer from ambiguity.  Petitioner's statements at the time of his plea are substantial and unambiguous evidence of the voluntary nature of his plea.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And the written guilty plea form signed by Petitioner is prima facie proof of the knowing and intelligent nature of his guilty plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), *citing Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986).

The record does not suggest that Petitioner pleaded guilty involuntarily or for some improperly coercive reason; by entering a guilty plea, Petitioner reduced his potential sentence from as much as 99 years' imprisonment to 15 years' imprisonment, a rational decision.  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101-02 (5th Cir. 1987).

With regard to the allegation that Petitioner was incapacitated by prescription medication when he entered his plea, the state habeas court, which was also the trial court, found that Petitioner was "thinking clearly" at the time of his plea. (ECF No. 14-18 at 161; ECF No. 12-2 at 5.)  The trial

court found Petitioner's affect and demeanor at his plea hearing did not indicate his thinking was muddled or that he was unclear as to the consequences of his guilty plea. (ECF No. 14-18 at 160-61.) Ultimately, the state habeas court found facts supporting the legal conclusion that the plea was knowing and voluntary. (ECF No. 14-20 at 24-25.)

The transcript of Petitioner's plea hearing, conducted February 19, 2014, indicates Petitioner was sworn and then testified as follows:

> Q. Mr. Torres, have you taken any prescribed medication today for any reason?
> A. Yes, I have.
> Q. What have you taken?
> A. Temazepam.
> Q. Temazepam is that for what; anxiety, depression?
> A. Yes.
> Q. The reason I'm asking is I need to make sure that you are thinking clearly and understand what's going on. Does that medication help you think more clearly?
> A. I guess.
> Q. You understand what's going on today?
> A. Yes.
> Q. You've discussed this case with your attorney before. Do you fully understand the consequences of entering a plea?
> A. Yes.
> Q. Yes?
> A. Yes.

(Clerk's R., ECF No. 14-6 at 37.)  The following colloquy also occurred:

> Q. THE COURT: So, Mr. Torres, you are charged in this case with the offense of aggravated sexual assault of an adult, which is a first degree felony. The range of punishment for a first degree felony is a minimum of five years, maximum of 99 years confinement in the Texas Department of Corrections and a fine not to exceed $10,000. Do you understand those charges?
> A. Yes.
> Q. How do you plead to those charges?
> A. Guilty I guess.
> Q. Before I can accept your plea of guilt, I need to make sure that you fully understood everything that's contained within what's been marked as State's Exhibit No. 1. It's entitled "Plea of guilty, Admonishment, Voluntary Statements, Waivers,

Stipulation, and Judicial Confession." Did you go over this document with Mr. Hudson?

A. Yes.

&ast;&ast;&ast;

Q. Is that your signature right there at the top of page four?

A. Yes.

Q. I need to make sure you're entering your plea today freely and voluntarily, is that correct?

A. Yes.

Q. Is anyone forcing you to do this?

A. No.

&ast;&ast;&ast;

Q. You're also giving up the right to bring witnesses to tell your side of the story and to cross examine any witnesses that the State might bring against you. Do you understand that?

A. Yes.

(Clerk's R., ECF No. 14-6 at 39-40.)

Q. THE COURT: I need to make sure that you understood when you signed this document that you were admitting to the truth of the allegations that are contained in writing on paragraph one and paragraph two at the bottom of page three.

A. Yes.

Q. You're also stipulating to or admitting to any evidence that the State would bring in order to prove those allegations. Do you understand that?

A. Yes.

Q. Are you satisfied with the advice and representation that Mr. Hudson has provided to you?

A. Yes.

(Clerk's R., ECF No. 14-6 at 41-42.)

Q. So then you're telling me you've gone over this entire document with Mr. Hudson, right?

A. Yes, ma'am.

Q. Do you fully understand it?

A. Yes, ma'am.

(Clerk's R., ECF No. 14-6 at 42-43.)

A federal district court must be deferential to state court factual findings supported by the record. *Pondexter v. Dretke*, 346 F.3d 142, 149-52 (5th Cir. 2003). In this case, the same judge presided over both Petitioner's trial and state habeas proceedings, warranting an especially strong presumption of correctness to the judge's findings of fact, including the credibility of Petitioner and the witnesses testifying at the writ hearing. *Miller–El v. Johnson*, 261 F.3d 445, 454 (5th Cir. 2001), *rev'd no other grounds*, 537 U.S. 322 (2003). Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual and credibility findings with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

The record in this matter supports the state court's factual determination that: Petitioner was not incapacitated by medication at the time of his guilty plea; he was aware of the nature of the charges against him, the punishment he faced as a result of the plea, and the rights he was waiving by pleading guilty; and that his guilty plea was entered on the sound advice of counsel and was not coerced. The trial court found that Petitioner's claims that his guilty plea was coerced and made while he was incapacitated by medication were not credible in light of his statements at his plea hearing and his signature on the written plea agreement. "A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005), *quoting Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999). The state habeas court's findings of fact and credibility determinations have not been rebutted by clear and convincing evidence. Therefore, the Court of Criminal Appeals' legal conclusion, that based on these factual findings Petitioner's guilty plea was not unknowing or involuntary, was not an unreasonable application of the facts to federal law.

14

Petitioner asserts that he did not want to enter a guilty plea because he was factually and legally innocent of the crime of conviction. However, these assertions are belied by the facts known to defense counsel at the time Petitioner entered his guilty plea, to which facts counsel testified at the second state habeas hearing. Counsel testified that, at the time he advised Petitioner to plead guilty, i.e., one week before his trial was to begin, the State had acquired photographs of injuries sustained by Petitioner's wife during the assault. (Writ. R. 83,781-02, ECF No. 14-19 at 81-82, 124.) Additionally, the State and defense counsel discovered Petitioner's son witnessed the assault and was prepared to testify as to Petitioner's guilt should Petitioner go to trial. (Writ. R. 83,781-02, ECF No. 14-19 at 183.)  It also appears from the record in this matter that, although Petitioner attempted to suspend a final adjudication of the charges against him until October of 2014, at which time his military retirement benefits were to vest, he was unsuccessful in doing so and, accordingly, there was no longer any incentive for him to continue to "stall" his state criminal proceedings.[2]

Because the state court's conclusion that the Petitioner's guilty plea was knowing, voluntary, and uncoerced was not an unreasonable application of the law to the facts in this matter, the Petitioner is not entitled to federal habeas relief on the claim that his guilty plea was involuntary, unknowing, and coerced.

---

[2] At the second state habeas hearing, Mr. Hudson testified:
The military. He pled to his conduct and I went there and I tried to mitigate it. I tried to minimize it. I tried to do everything that I think a responsible person would do or a responsible lawyer and they didn't care. He did all those things and he gave up almost – he was about six to eight months shy of a full retirement for that. And that's what we were really trying to negotiate was just push this down the way so we could just get his full retirement. But at some point the Judge and you guys put a stop to that and we had to do something.
(Writ. R. 83,781-02, ECF No. 14-19 at 129.)

15

### 2. Ineffective Assistance of Counsel

Petitioner alleges his trial counsel was ineffective for coercing him into pleading guilty. (Pet. 6-7; Mem. 2-7.) Specifically, he claims that counsel advised him that if he went to trial he would receive a sentence of as much as 60 years to life, and that counsel did not investigate Petitioner's "mental condition." (Mem. 9, ECF No. 6 at 9-9.)

Ineffective assistance of counsel claims in the context of the entry of a guilty plea are governed by the United States Supreme Court's opinion in *Hill v. Lockhart*, which adopted the *Strickland* test. 474 U.S. 52, 57-58 (1985). A habeas petitioner challenging his guilty plea must show that the advice he received from his counsel with regard to his guilty plea "'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56, *quoting McMann*, 397 U.S. at 771. In the context of a guilty plea, an attorney's advice "need not be perfect, but it must be reasonably competent." *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974) (citation omitted). For a petitioner to succeed on a complaint that counsel rendered ineffective assistance in connection with a guilty plea, he must prove that counsel's "misadvice fell short of an objective standard of reasonableness." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (internal quotation and citation omitted). A petitioner must show that "the advice he received from [his attorney] during the course of the representation and concerning the guilty plea was not 'within the range of competence demanded of attorneys in criminal cases.'" *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (quoting *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).

With regard to the prejudice prong of the *Strickland* test, to establish prejudice the pleading defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. "To

16

evaluate whether a defendant who has pleaded guilty has been prejudiced by his counsel's deficient performance, i.e., whether he would not have pleaded guilty had his counsel not been deficient, we must evaluate what the outcome of a trial might have been." *del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007).

The state habeas court held two hearings to address Petitioner's claim that trial counsel coerced him into pleading guilty. Trial counsel testified that he did not coerce Petitioner, and counsel testified he did not tell Petitioner that if he did not accept the plea offer he would be sentenced to a term of 60 years' imprisonment. (Writ. R. 83,781-02, ECF No. 14-19 at 84-85, 86-87, 90, 92-93, 125.) In denying relief, the Texas Court of Criminal Appeals adopted the state trial and habeas court's implicit credibility finding in counsel's favor. Petitioner fails to overcome the presumption of correctness afforded these findings with clear and convincing evidence.

The choice of whether or not to plead guilty is a strategic decision. "Trial counsel's strategic decisions must be given a strong degree of deference." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017). Counsel's advice to a defendant to accept or reject a proposed plea agreement, in light of the facts and circumstances of the case, is a strategic choice that rests within counsel's professional judgment. *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992). The burden is on the petitioner to demonstrate that counsel's strategy was unreasonable. *Strickland*, 466 U.S. at 689. And it is the petitioner's burden to "affirmatively prove," not just allege, prejudice arising from any unreasonable strategic choice. *Id.* at 693.

Trial counsel's advice to accept the guilty plea was reasonable. During the second state habeas hearing, Mr. Hudson testified the State had admissible, photographic evidence of the crime. (Writ. R. 83,781-02, ECF No. 14-19 at 81-82, 124.) Defense counsel further testified he had

ascertained Petitioner's son had witnessed the assault on his mother, and that Petitioner's son would be "a very reliable witness" if Petitioner went to trial. (Writ. R. 83,781-02,ECF No. 14-19 at 52-53; ECF No. 14-19 at 133.)[3]  Mr. Hudson further testified at the state habeas hearings that Petitioner had confessed his guilt to Mr. Hudson. (Writ. R. 83,781-02, ECF No. 14-9 at 27, 83.)

Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. *Strickland*, 466 U.S. at 694.  In evaluating counsel's performance, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *accord Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011); *see also Pinholster*, 131 S. Ct. at 1403. Because counsel's advice to Petitioner to accept the plea agreement was reasonable, the state court's denial of Petitioner's claim was not clearly contrary to or an unreasonable application of *Strickland*.

## III.  CERTIFICATE OF APPEALABILITY

A party may not appeal a final order in a § 2254 proceeding unless a judge or a circuit justice first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2254

---

[3] Mr. Hudson testified:
I talked to the children. I talked to the son and if the son took the stand we were going to lose, bad . . . He was going to say that he saw the assault, he saw the physical violence, he saw the rape, he saw everything. I have an audio interview of his interview by my investigator. He said that he was scared that his mom was going to die and he was totally worried about anything that he would have to say because he didn't want to have to go into court and testify against his dad . . . I told Juan, I said, "Look, if they put him on the stand you will lose and you will most likely go to prison." And that was, I mean that was the whole thing.
(Writ. R. 83,781-02, ECF No. 14-19 at 183).

18

Cases in the United States District Courts. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to [obtain a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 338 (quoting *Slack*, 529 U.S. at 484). When the district court's denial of relief is based solely on procedural grounds, "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

For the reasons stated in this Report and Recommendation, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability should be denied.

## IV.  CONCLUSION

The petition, the response, the record, and the applicable law demonstrate that Petitioner is not entitled to relief. Accordingly it is **RECOMMENDED** that Petitioner's § 2254 Petition for a Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] be **DENIED.** It is further **RECOMMENDED** that a certificate of appealability be **DENIED.**

## V.  NOTICE

The parties may wish to file objections to the above recommendations. Failure to file written objections to the findings and recommendations contained in this Report and Recommendation within **fourteen (14)** days from the date of its receipt shall bar an aggrieved party from receiving *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. 636(b)(1)(C), and shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). The Clerk shall promptly mail copies of this Report and Recommendation to all parties and their counsel by certified mail, return receipt requested. This Report and Recommendation disposes of all issues and controversies referred to the undersigned in the above-captioned cause. The Clerk shall terminate the referral entered in the above-captioned cause.

**SIGNED** and **ENTERED** this 5th day of February, 2018.

_____

**VICTOR ROBERTO GARCÍA**
**UNITED STATES MAGISTRATE JUDGE**